```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA

LEON WHITFIELD, ET AL                    CIVIL ACTION

VERSUS                                   NO: 06-4166

COUNTRYWIDE HOME LOANS,                  SECTION: J(2)
INC., ET AL
```

**ORDER AND REASONS**

Before the Court is Defendant, Alpha Insurance, LLC's ("Alpha")[1] **Motion for Summary Judgment (Rec. Doc. 91)** through which Alpha seeks dismissal of all of Plaintiffs' claims on the grounds that all claims against Alpha are perempted. This motion is set for hearing on January 9, 2008 on the briefs. Pro se Plaintiffs have not filed an opposition to Alpha's motion, but have filed their own **Motion for Summary Judgment (Rec. Doc. 97).** Plaintiffs' motion, set for hearing on January 23, 2008 on the briefs, is responsive to Alpha's motion and will be construed by the Court as Plaintiffs' opposition thereto.

Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that Alpha's motion should be granted and that Plaintiffs' motion should be denied.

---

[1] Alpha is Plaintiffs' insurance agent.

**Background Facts**

On September 30, 1994, Plaintiffs purchased property located at 7451 Camberly Drive, New Orleans, Louisiana 70128 ("the property"). Through their lender, Countrywide, Plaintiffs purchased a Standard Flood Insurance Policy ("SFIP") in the amount of $33,000.00 ("the $33,000 policy") from Banker's Insurance Company ("Bankers"). The $33,000 policy was renewed each year from 1995 through 2004 in the amount of $33,000 in building coverage and no contents coverage. It was paid through funds held in escrow by Countrywide.

On June 4, 2003, Plaintiffs refinanced and increased their existing mortgage through Countrywide to $112,600 on the property, which necessitated a SFIP with higher coverage limits. Plaintiffs purchased a second, separate SFIP issued by Omaha Property and Casualty, ("OPAC") in the amount of $113,000 for building coverage and $20,000 in personal property coverage (for a total of $133,000 in coverage) ("the $133,000 policy") for the policy term of May 30, 2003, through May 30, 2004. Southern Title, Inc., the company that facilitated the refinance, withheld $838 as the first year's premium on the $133,000 policy and forwarded the premium to Alpha at Alpha's instruction. At the time of the 2003 refinance of the property, Alpha completed the application for the $133,000 policy; however, Alpha did not designate a payor for the purpose of the renewal of the policy. As such, the insureds themselves were listed as the payor of the renewal premium as shown on the declarations page issued for the

$133,000 policy.

During the policy period term 2003 through 2004, Plaintiffs actually had two SFIPs for the property.  In 2004, because Bankers and Omaha ceased to participate in the NFIP, the two policies were rolled over to Fidelity when Fidelity acquired each of these companies' book of SFIPs.  Fidelity submitted a renewal notice and invoice for payment to Countrywide, who was designated as the payor for the $33,000 policy and who continued to administer Plaintiffs' loan.  Countrywide maintained an escrow account through which insurances and taxes were paid.  Countrywide paid Fidelity the premium for the $33,000 policy.  This policy remains in place even today.  Full limits of this policy were paid to Plaintiffs as a result of Hurricane Katrina-related flood damages.

On March 31, 2004, 60 days prior to the expiration of the $133,000 policy, in accordance with the information reflected on the declarations page for this policy that the insureds were the payors of the premiums for the SFIP, Fidelity submitted a premium renewal notice and invoice for $875 to the Plaintiffs for the $133,000 policy at the address listed on their application and declarations page for the $133,000 policy.  The $133,000 policy was scheduled to expire on May 30, 2004.  Fidelity received no premium from Plaintiffs, Countrywide, or anyone else to renew the $133,000 policy.  Again on May 17, 2004, thirteen days prior to the expiration of the $133,000 policy, Fidelity sent the Plaintiffs a second renewal notice and invoice for $875 to the

Plaintiffs' address listed by Alpha on Plaintiffs' application for flood insurance, to renew the policy at issue for the term May 30, 2005.  Plaintiffs did not pay the renewal premium for the $133,000 policy; thus, on May 30, 2004, at 12:01 a.m. the policy expired and lapsed due to non-payment of renewal premiums.  As a result, when Hurricane Katrina struck New Orleans on August 29, 2005, more than fourteen months has passed since the $133,000 flood policy had lapsed.

When Plaintiffs received the above-mentioned renewal notices, they called a representative of Alpha.  According to Plaintiffs, the Alpha representative told Plaintiffs that Countrywide had not paid the bill and that Plaintiffs needed to pay the bill.  Plaintiffs then contacted Countrywide and were erroneously told that their flood policy premium had been paid; however, Countrywide was referring to the $33,000 flood policy.  Plaintiffs then contacted Alpha and told Alpha that Countrywide had paid the bill.

### The Parties' Arguments

According to Alpha, all claims against it are perempted pursuant to La. Rev. Stat. 9:5606.  Plaintiffs alleged in their original petition that the proximate cause of the non-renewal of the $133,000 policy was the negligence of Alpha in failing to send an invoice and notification to Countrywide.  The application for the $133,000 policy was completed on May 30, 2003.  As the alleged act of negligence by Alpha was the failure to designate Countrywide as the recipient of the flood insurance invoice under

4

the direct bill section of the application, Plaintiffs had three years from May 30, 2003 to file suit against Alpha for this alleged error or omission.  La. R.S. 9:5606.  Plaintiffs filed suit on June 23, 2006, more than three years from this alleged act of negligence by Alpha.  Therefore, according to Alpha, all claims against Alpha are perempted.

In response, Plaintiffs argue that the flood policy renewal date should be the date used for purposes of calculating the applicable three year peremption period.  Plaintiffs argue that they did not have the advantage of reviewing the application for flood insurance at the issue date or anytime thereafter for its accuracy.  Even if they had reviewed the application, Plaintiffs argue it is not reasonable for them to have known the "impact associated with the inclusion or omission of entries in each field on an insurance company application."  Alpha and Countrywide, professionals in the field of insurance and mortgage lending administration, failed to discover the cause of the escrow problem until after suit was filed in 2006.  Therefore, it is not reasonable to expect Plaintiffs to have discovered the problem in 2003 when the policy was issued.

As a result, Plaintiffs state that the date of Alpha's negligent act occurred in 2004, after Plaintiffs gave notice to Alpha that they had received renewal notices requesting flood premium payment, which makes their filing of suit on June 23, 2006 well within the statute of limitations period.  Therefore, according to Plaintiffs, the policy renewal date of May 30, 2004,

rather than the application date of May 30, 3003, should be used for purposes of calculating the applicable three year peremption period.

## Discussion

**A.  Applicable Law**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

**B.  Timeliness of Plaintiffs' Suit**

According to La. R.S. 9:5606:

> No action for damages against any insurance agent . . . whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.  However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

Therefore, under the law, regardless of the one year prescriptive

6

period, any claim against an insurance agent or agency is perempted after three years.[2]

Louisiana courts have held that peremption begins to run from the date of purchase of the insurance policy. Holmes v. AAA Ins., No. 06-3837, 2007 WL 3124678, *2 (E.D. La. Oct. 25, 2007); see also Calvin v. Janbar Enters., 856 So. 2d 88, 91 (La. App. 4th Cir. 2003); Bel v. State Farm Mut. Auto. Ins. Co., 845 So. 2d 377, 381-82 (La. App. 1st Cir. 2003). Plaintiffs do not dispute that the application was completed on May 30, 2003 or that they filed suit on June 23, 2006. Therefore, the relevant negligent act, Alpha's failure to designate a payor for the purpose of the renewal of the policy, occurred more than three years prior to plaintiffs' filing of suit.[3] As the clear wording of La. Rev. Stat. 9:5606 states that "in all events such actions shall be filed at the latest within three years from the date of the

---

[2] A peremptive period is a period of time fixed by law for the existence of a right, and the right is extinguished unless timely exercised within the period. Bates v. Allstate Ins. Co., No. 06-10566, 2007 WL 2029489, *4 (E.D. La. July 11, 2007).

[3] The application for the $133,000 policy was completed by a representative of Alpha on May 30, 2003. It was on this date that the allegedly negligent act was committed. However, the policy was not purchased by Plaintiffs until June 4, 2003. Louisiana cases have determined peremption begins to run on the "date of purchase" of the insurance contract. However, since suit was not filed until June 23, 2006, the three year peremption period would still bar the instant suit should the purchase date of June 4, 2003 be used as the starting date for the running of peremption rather than the application date of May 30, 2003 as Alpha suggests.

7

alleged act, omission, or neglect,"[4] Plaintiffs' claims against Alpha are perempted.[5] Accordingly,

**IT IS ORDERED** that Alpha's **Motion for Summary Judgment (Rec. Doc. 91)** is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' **Motion for Summary Judgment (Rec. Doc. 97)** is hereby **DENIED**.

New Orleans, Louisiana, this 11th day of January, 2008.

*[signature]*
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[4] "When a law is clear and unambiguous . . . the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code art. 9.

[5] Plaintiff argues that the policy renewal date of May 30, 2004 should be used as the start date for purposes of calculating the peremptive period. This Court disagrees with Plaintiff. In general, renewals of insurance policies do not operate to restart preemption. Southern Athletic Club, LLC v. Hanover Insurance Company, et. al., No. 06-2605, 2006 WL 2583406, *3 (E.D. La. Sept. 6, 2006) (citing Dobson v. Allstate Ins. Co., No. 06-252, 2006 WL 2078423, *8 (E.D. La. July 21, 2006)).